UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| EQT GATHERING, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>A TRACT OF PROPERTY SITUATED<br>IN KNOTT COUNTY, KENTUCKY,<br>*Corresponding to Property Tax Map<br>Number 87, Parcel 47 (160 acres)*, et al.,<br><br>    Defendants. | Civil Action No. 12-58-ART<br><br><br><br>**MEMORANDUM OPINION &<br>ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

"*Before* impugning an opponent's motives, even when they legitimately may be impugned, answer his arguments." Sidney Hook, *The Ethics of Controversy*, *in* Philosophy and Public Policy 117, 122 (1980). In our federal system, plaintiffs who satisfy the requirements of 28 U.S.C. § 1332 are free to file actions based on state law in federal court. There are many reasons a plaintiff might choose to do so. At various points in their briefs, each party questions the motives of the other. But the role of a district court is not to examine those motives; it is to determine whether it has jurisdiction over a case based on the applicable rules and doctrines and, if it does, to rule on the merits.

The defendants seek to dismiss this condemnation proceeding on three grounds: (1) the plaintiff either failed to establish jurisdiction or waived its right to proceed in federal court; (2) if the Court has jurisdiction, it should abstain from exercising it; and (3) the plaintiff failed to comply with state and federal procedural rules for condemnation

proceedings. Because clear precedent forecloses each of these arguments, the motion to dismiss is denied.

## BACKGROUND

On June 13, 2012, EQT Gathering, LLC, a company that constructs, maintains, and operates natural gas pipelines, filed this condemnation action under Kentucky Revised Statutes §§ 278.502 and 416.550 through 416.670. Compl., R. 1 ¶¶ 1, 4, 13. EQT wants certain rights-of-way on 160 acres of property in Knott County, Kentucky, so that it can maintain and operate an existing natural gas pipeline, the Mayking Node 3. *Id.* ¶ 6. Consistent with Federal Rule of Civil Procedure 71.1, which governs condemnation actions, EQT named as defendants the individuals that were known to "hav[e] or claim[] an interest in the property." 12 Charles Alan Wright et al., Federal Practice & Procedure: Civil § 3045 (2d ed. 2012); *see* R. 1 at 1–2. On July 9, 2012, those defendants filed a joint motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim for relief. R. 21.

The pleadings and briefs on the motion to dismiss make it clear that this is not the parties' first tussle. The property owners in this case filed a trespass action in Knott Circuit Court against multiple defendants, including EQT. *See* R. 1 ¶ 12; Answer, R. 20 ¶ 12. EQT moved for summary judgment and argued that Kentucky law treats trespass actions against an entity with the power of eminent domain as inverse condemnation actions. *See* R. 23-12. The property owners responded that Kentucky law requires a condemnation action before a trespass action will be treated as one for inverse condemnation. *See* R. 23-13. The motion was denied without opinion on August 20, 2012. *See* Order Overruling, *Honican, et al. v. EQT Gathering LLC*, No. 09-CI-00237 (Knott Cnty. Cir. Ct. Aug. 20, 2012) (consolidated with 09-CI-00334).

## DISCUSSION

As an initial matter, the defendants' do not specify which Rule 12(b) defenses they assert. A review of their motion to dismiss reveals four arguments. *See supra* at 1–2. The first argument relates to subject-matter jurisdiction, which is the proper subject of a Rule 12(b)(1) motion. *See* Fed. R. Civ. P. 12(b)(1). The second and third relate to doctrines of abstention that allow a federal court to refrain from exercising jurisdiction and are also properly brought under Rule 12(b)(1). *See, e.g.*, *Coles v. Granville*, 448 F.3d 853, 857–67 (6th Cir. 2006) (affirming the district court's dismissal of a case under Rule 12(b)(1) on *Rooker-Feldman* and *Younger* abstention grounds). The fourth argument alleges EQT failed to comply with procedural requirements and can be dealt with under Rule 12(b)(6).

EQT asserts the motion should be converted into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). R. 23 at 3. Conversion under this rule requires matters "outside the pleadings" to be "presented to and not excluded by the court." Fed. R. Civ. P. 12(d). The defendants attached six documents from the state-court proceeding mentioned in the complaint, R. 1 ¶ 12, to their motion to dismiss. R. 22-1 to -6. The documents are all public records, which a court may consider without converting a 12(b)(6) motion. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Furthermore (and this is why the type of Rule 12(b) motion matters), the documents are relevant to only the jurisdictional questions. The Court may consider evidence to resolve jurisdictional disputes under Rule 12(b)(1) but cannot consider evidence under Rule 12(b)(6). *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). Therefore conversion is unnecessary, and the Court will not consider EQT's extrinsic evidence.

I.  **The Jurisdictional Arguments**

   A.  **The Amount-In-Controversy Requirement**

As the party filing the lawsuit, the plaintiff bears the burden of proof to demonstrate jurisdiction. *See Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). The defendants argue that EQT has not proven the amount in controversy is above the $75,000 requirement for diversity jurisdiction. In doing so, they do not offer any facts of their own. Thus, the Court accepts the allegations in the complaint as true when evaluating the challenge. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

The complaint alleges that EQT will have to either reroute the Meyking Node 3 pipeline or construct an additional pipeline if it is unable to condemn the defendants' properties. It alleges the cost of those actions would be greater than $75,000. R. 1 ¶ 7. The defendants argue that the proper measure of the amount in controversy is actually the value of the defendants' property and that EQT cannot aggregate those property values to meet the $75,000 requirement. The Court rejected this exact argument once before because the amount in controversy is generally calculated "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (quotation omitted); *see also* Minute Entry Order, *EQT Gathering, LLC v. A Tract of Property Situated in Letcher County*, No. 09-79-ART (E.D. Ky. Sept. 17, 2009), R. 23.[1] Therefore the relevant figure is not the value of the defendants' land, but the costs EQT Gathering will incur if unable to condemn their property.

---

[1] The debate over whether the amount in controversy must be determined only from the plaintiff's perspective or from either the defendant's or the plaintiff's perspective does not affect this case. *See, e.g.*, *Olden v. Lafarge Corp.*, 383 F.3d 495, 503 n.1 (6th Cir. 2004).

In the alternative, the defendants argue EQT Gathering's claim that its costs will be greater than $75,000 is "unverified and unproven." R. 21 at 20. That statement is not enough to cast doubt on the allegations in the complaint, which, as explained, are presumed correct. And in any case the Coots Affidavit, which estimates the cost of rerouting the Mayking Node 3 pipeline at over one million dollars, extinguishes all doubt. *See* R. 23-15; *see also Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990) ("[T]he court is empowered to resolve factual disputes when subject-matter jurisdiction is challenged [on a Rule 12(b)(1) motion]."). Because it does not appear "to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount," dismissal for lack of subject matter jurisdiction is improper. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990).

B.   **Waiver of Federal Jurisdiction**

A defendant in a state-court action can waive his right *to remove* the case to federal court by "tak[ing] actions in state court that manifest his or her intent to have the matter adjudicated there." *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 649 (9th Cir. 2003). This is not a removal case, so the defendants' waiver argument does not apply. *See* R. 21 at 8–10.

The defendants urge this Court to penalize EQT for filing this "duplicative" suit, which they believe is a clear example of forum shopping. *See* R. 21 at 10–12. The presence of a parallel state-court action does not generally bar a plaintiff from filing suit in federal court. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In any event, the trespass suit is not parallel to this condemnation suit. The defendants claim the state and federal cases are parallel because the question whether EQT Gathering has the

5

authority to condemn their land under Kentucky law is in dispute in the state suit. R. 21 at 12. In state court, EQT argued that damages for trespass are limited to diminution of value because it has the power of eminent domain. *See* R. 23 at 10–11 (describing the second summary judgment motions); *see also id.* (arguing the property owners did not contest EQT's eminent domain authority in state court). The fact that a state action may raise a similar issue does not make it parallel. A parallel action requires substantially similar parties, claims, and issues, such that the actions can be thought of as substitutes. *See Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). A condemnation action in the Kentucky courts would be a parallel state action. But the state action here is the property owners' trespass suit, which seeks damages for past actions, not a transfer of title. To gain title, EQT had to file a separate condemnation action: The only question was whether to do so in state or federal court. Finally, the trespass suit includes additional defendants. R. 23 at 25. The state-court trespass action is relevant, if at all, only if the state court issues a decision that has preclusive effect on this case. *See* 28 U.S.C. § 1738. Because there is no argument that EQT waived its right to federal jurisdiction, this Court has jurisdiction.

## II. The Abstention Arguments

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River*, 424 U.S. at 817. Thus the defendants' argument for abstention starts from a disadvantage.

### A. *Colorado River Water Conservation District* Abstention

Under the *Colorado River* doctrine, a federal court may dismiss an action in favor of a concurrent state-court proceeding when considerations of "conservation of judicial resources

6

and comprehensive disposition of litigation" counsel against retaining jurisdiction. *Colo. River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). In order for the doctrine to apply, however, a parallel state action must exist. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). There is no parallel state action here. *See supra* at 6. The danger that *Colorado River* seeks to avoid is piecemeal litigation. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983) (noting that the existence of a parallel state action is the "paramount" consideration when deciding whether to abstain under *Colorado River*). And that problem does not exist when the litigation is not parallel because two suits will be required even with abstention. *Id.* Thus *Colorado River* abstention is not appropriate.

### B.  *Thibodaux* Abstention

*Thibodaux* abstention counsels district courts to abstain when a case raises novel issues of state law that are "intimately involved with sovereign prerogative," as eminent domain is. *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28–29 (1959). Why? Because all a district court sitting in diversity does is make an educated guess as to what the state courts would do. *See Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 755 (6th Cir. 2007). Abstention allows parties to ask the state courts for a declaratory judgment on the state law question and then return to federal court with an answer in hand.

*Thibodaux* abstention is inappropriate in this case because state law is clear. The defendants urge this Court to abstain because Ky. Rev. Stat. § 278.502 "has never been interpreted, in respect to a situation like that before the [Court]." R. 21 at 18 (quoting *Thibodaux*, 360 U.S. at 30). They do not explain how § 278.502 is ambiguous in this case or point to any conflicting interpretations of the statute that the Kentucky courts are better

7

suited to resolve. *See Thibodaux*, 360 U.S. at 30 (noting disagreement between an opinion of the Louisiana Attorney General and the language of the state statute). Perhaps the defendants believe it is unclear whether state law gives EQT the authority to condemn their property. See R. 21 at 18 (referencing the second motion for summary judgment proceedings). If that is the case, they must at least explain to the Court why the language of § 278.502, which clearly references pipeline companies, is unclear. They must also explain why the Kentucky courts would be better suited to resolve the ambiguity. They have not done so. Because there is no apparent ambiguity for the Court to resolve, there is no reason to abstain.

    **C.**     *Pullman* **Abstention**

Citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), the defendants argue that the Court should abstain, *see* R. 21 at 27. But *Pennhurst* held that the Eleventh Amendment bars federal courts from enjoining state officials on the basis of state law. 465 U.S. at 106. Maybe the defendants intended to invoke *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). *See* R. 21 at 26–28 (arguing that § 278.502 is unconstitutional under the state and federal constitutions, that a federal court cannot find that a state law violates a state constitution, and that the Kentucky courts should be permitted to resolve the issue). When the constitutionality of a state statute is raised, *Pullman* abstention allows the federal court to stay a case in favor of a state court declaratory judgment action. This gives the state courts a chance to interpret the statute in a way that avoids the constitutional problem. *Pullman* abstention prevents the federal courts from making unnecessary constitutional rulings and preserves state laws. *See* 312 U.S. at 500–01. *Pullman* abstention is not appropriate here.

The Kentucky Supreme Court has repeatedly held that § 278.502 (and previous versions of the statute) does not violate the Kentucky Constitution. *See Cornwell v. Cent. Ky. Natural Gas Co.*, 249 S.W.2d 531, 533 (Ky. 1952) ("Appellants concede K.S. § 3766b–1 (which later became KRS 278.500) was declared to be constitutional [in *Calor* and *Kentucky Heating Company*]."); *Barker v. Lannert*, 222 S.W.2d 659, 664 (Ky. 1949) ("We are of the opinion that the act in question does not contravene the provisions of either sections 13 or 242 of the Constitution."); *Kentucky Heating Co. v. Calor Oil & Gas Co.*, 142 S.W. 728, 728 (Ky. 1912) ("In the former opinions of the court . . . , this court has declared the constitutionality of the statute. . . . We are not disposed to alter the position taken in those cases."); *Calor Oil & Gas Co. v. Franzell*, 109 S.W. 328, 331 (Ky. 1908) ("The question of the constitutionality of section 3766a of the Kentucky Statutes of 1903, which gives the right of eminent domain to the owners of gas and oil wells for the purpose of piping their products to market, is not now an open one.").

The defendants' argument that § 278.502 violates the Federal Constitution is one sentence and exists only by reference to their argument that § 278.502 violates the Kentucky Constitution. *See* R. 21 at 27 ("Of course, the [defendants] also maintain that KRS § 278.502 offends the Fifth Amendment to the U.S. Constitution in this regard as well."). Because the later argument lacks any basis in precedent, this Court will not attempt to make an argument on the defendants' behalf. *See United States v. Zannino*, 895 F.2d 1, 7 (1st Cir.1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Because there is no reason to doubt the constitutionality of § 278.502, there is no reason to abstain under *Pullman*.

Finally, the defendants suggest that the Kentucky Supreme Court should be given the opportunity to grant them greater protection under the state constitution. R. 21 at 27–28. The Court will not abstain based on the theoretical possibility that a state court might overrule prior precedent, as that would require abstention in every diversity case.

### III.     The Rule 12(b)(6) Motion

In the alternative, the defendants argue that the plaintiff's complaint must be dismissed. *See* Fed. R. Civ. P. 12(b)(6). The defendants' argument in favor of dismissal under Rule 12(b)(6) is twofold: (1) EQT cannot exercise the power of eminent domain under § 278.502; and (2) even if it can, EQT violated the procedural requirements of Fed. R. Civ. P. 71.1 and the Kentucky Eminent Domain Act. Both arguments miss the mark.

"In deciding a Rule 12(b)(6) motion, a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true. But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (internal citations and quotation omitted). To survive a motion to dismiss, the claim must be more than "speculative." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the complaint does not need to allege specific facts as long as it gives a defendant fair notice of the claim and the basis for the claim. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

#### A.     EQT's Eminent Domain Authority Under Ky. Rev. Stat. § 278.502

Rule 71.1, which governs diversity condemnation proceedings, requires "a short and plain statement of . . . the authority for the taking." Fed. R. Civ. P. 71.1(c)(2)(A). EQT claims the authority to condemn the defendants' properties from Ky. Rev. Stat. § 278.502. R. 1 ¶ 13. The statute provides:

> "Any corporation or partnership organized for the purpose of, and any individual engaged in or proposing to engage in, constructing, maintaining, or operating oil or gas wells or pipelines for transporting or delivering oil or gas, including oil and gas products, in public service may, if it is unable to contract or agree with the owner after a good faith effort to do so, condemn the lands and material or the use and occupation of the lands that are necessary for constructing, maintaining, drilling, utilizing, and operating pipelines . . . ."

Ky. Rev. Stat. § 278.502.

The defendants argue that EQT has not pled sufficient facts to establish that it can invoke the eminent-domain authority granted in § 278.502. But EQT has done so.

First, the defendants argue EQT has not alleged "a good faith effort" to acquire the property directly from the defendants. R. 21 at 23. The complaint alleges that "EQT Gathering was unable to contract, or otherwise agree, with the owners of the subject property." R. 1 ¶ 12; *see also id.* ¶ 18. The complaint also alleges that the defendants in this case initiated a trespass suit against EQT in state court. *Id.* The complaint, of course, does not use the phrase "good faith," but doing so would have been an impermissible statement of a legal conclusion. *See Tackett*, 561 F.3d at 488. The allegation that EQT attempted and was unable to acquire the defendants' property outside of a condemnation proceeding is sufficient to put the defendants on notice of the basis for EQT's claim of authority to condemn their property under § 278.502.

Second, the defendants argue that EQT did not allege that condemnation is "necessary" because the complaint indicates that the current pipeline location was a mistake. R. 21 at 24–25. The complaint alleges that EQT did not condemn defendants' property before construction because "the pipeline was intended and believed to be constructed on property adjacent to the [defendants'] property." R. 1 ¶ 10. After construction, EQT received information that the pipeline actually fell partially on the defendants' property. *Id.*

Now that the pipeline exists, EQT seeks condemnation of the defendants' property to maintain the pipeline in its current form. *Id.* The case the defendants cite for support actually shows that necessity is a flexible term. *See Petroleum Exploration v. Hensley*, 213 S.W.2d 262, 263 (Ky. 1948) ("The question is: In the light of the facts here, is the course as desired a practical necessity?"). The discussion of the amount in controversy, *supra* at 4–5, showed that, as between condemning the defendants' land and rerouting or rebuilding the pipeline, it is at least plausible that condemnation is a practical necessity. The "mistake" at issue here is unclear: It could be that the pipeline was constructed in the wrong spot or that the initial surveys and maps were incorrect. In either case, the complaint does not indicate that EQT "capriciously or wantonly locate[d] its line so as to injure" the defendants in violation of the rule in *Hensley*. *Hensley*, 213 S.W.3d at 263. The complaint sufficiently puts the defendants on notice of the basis for EQT's claim of necessity under § 278.502, which is all that is required to avoid dismissal under Rule 12(b)(6).

## B.     The Procedural Requirements of Fed. R. Civ. P. 71.1 and Kentucky Law

Rule 71.1 "governs an action involving eminent domain under state law," except "if state law provides for trying an issue by jury—or for trying the issue of compensation by jury or commission or both—that law governs." Fed. R. Civ. P. 71.1(k). So the defendants' arguments that EQT did not comply with the procedural requirements of the Kentucky Eminent Domain Act, Ky. Rev. Stat. §§ 416.540 to .680, are not grounds for dismissal. EQT's failure to file a petition in state court, R. 21 at 23, to describe "the current use and occupation of the lands to be condemned," *id.* at 25, and to apply to the state court for the appointment of commissioners, *id.*, might have been problematic had the case been filed in state court. But those failures do not violate Rule 71.1.

Finally the defendants argue that EQT did not comply with a provision of Rule 71.1 that requires a plaintiff to "name as defendants both the property—designated generally by kind, quantity, and location—and at least one owner of some part of or interest in the property." Fed. R. Civ. P. 71.1(c)(1). According to the defendants, EQT's complaint names only "A Tract of Property Situated in Knott County" as a defendant. R. 21 at 24. The caption states that there are "Defendants," and then lists both named and unnamed owners of property under the heading "Serve." R. 1 at 1–2. The complaint indicates the listed named and unnamed owners are defendants as well. The defendants are correct that the complaint is not a model of clarity. But that does not mean the complaint violates Rule 71.1(c)(1). Therefore there is no procedural violation that justifies dismissal of this case.

## CONCLUSION

Accordingly, it is **ORDERED** that the defendants' motion to dismiss, R. 21, is **DENIED**.

This the 18th day of September, 2012.

Signed By:
*Amul R. Thapar*   AT
United States District Judge